453 P.2d 577

Claudia **FOUNTAIN**, Claimant-Appellant,

v.

**T. Y. & JIM HOM** dba Chopstick Cafe, and Argonaut Insurance Company, Defendants-Respondents.

No. 10216.

Supreme Court of Idaho.

April 24, 1969.

---

5. It is not clear from the affidavit who authored the interpretation.

Racine, Huntley, Herzog & Olson, Pocatello, for appellant.

Moffatt, Thomas, Barrett & Blanton, Boise, for respondents.

SPEAR, Justice.

On September 11, 1963, Claudia Fountain, appellant herein, injured her back while lifting a tray of dishes at her place of employment, the Chopstick Cafe in Pocatello, Idaho. After some diagnostic studies it was determined appellant had a vertebral injury in the 5th lumbar—1st sacral area. In December of 1963, exploratory surgery and a laminectomy were performed. The 4th lumbar disc was determined to be normal.

After the December 1963 operation, the appellant evidenced symptoms of pain in the back and down the right leg through the ankle and foot with numbness on the calf and sole of the foot. Further surgery was recommended and performed in May of 1964. During this second surgery a further laminectomy and a lumbo-sacral joint fusion were performed.

In November 1964, Dr. E. B. Shaw, of Pocatello, saw appellant for the first time. In January of 1965, he performed the third operation. He found the area of L3–L5 to be normal, but the L5–S1 area was affected with nerve root adhesions as a result of scar tissue formation. The nerve roots were freed and the holes through which they passed were enlarged.

After the third operation appellant suffered from "drop foot" of her right foot and had to wear a brace to walk. She also had extensive pain and numbness on the outside of her leg from the knee down.

Subsequently, appellant and representatives of the respondents arranged for an evaluation of appellant's condition by a panel of three Boise doctors. Dr. Shaw concurred in the panel's conclusion that appellant should be rated for a partial permanent disability of 50% of the loss of one leg at the hip. At Dr. Shaw's request, appellant was also examined by a neurosurgeon who likewise concurred that no further surgical procedure was indicated.

Thereafter a lump sum settlement agreement was entered into by appellant, who was represented by counsel, and the respondents. The agreement contained the following language:

"I hereby request that the balance of permanent partial compensation due be paid in a lump sum. *It has been explained to me that, by the acceptance of a lump sum settlement, my case is forever closed.* It is further understood and agreed that *all future medical expense is to be borne by me* and included herein." (emphasis added)

Consideration for the agreement was $3,410.32 for 94 weeks and two days of a disability equivalent of 50% of the loss of one leg at the hip. An additional $586.70 was paid as consideration for the lump sum agreement itself. The agreement was approved by the Industrial Accident Board on September 13, 1965.

Appellant did not again consult Dr. E. B. Shaw until about one year later, August 23, 1966. At that time she complained that her condition had apparently deteriorated over the immediately prior six weeks and that although she had been doing fairly well previously she was then suffering a recurrence of her earlier symptoms.

On August 30, 1966, appellant was admitted to the hospital for certain conservative treatment such as traction. The treatment was apparently unsuccessful and on September 9, 1966, a myelogram was performed. According to Dr. Shaw, the myelogram showed "that she had some apparently ruptured disc at L-4, 5 and L-5 S-1 level." Appellant was scheduled for surgery and was operated on on September 12, 1966. Dr. Shaw described the operation as follows:

"I operated on her back *in the same place as before* and examined the lower three discs at this area. I found a protruded ruptured disc at the L-4, 5 level on the right as well as rather severe adhesions around the L-5 S-1 nerve root on the right.

"The disc was removed, the adhesions were relieved as well as possible, and I performed a transverse process fusion of this lady because during the operation, the old fusion she had was broken up in order to examine the nerve root." (emphasis added)

The doctor then described the results of the surgery:

"Q And would you state whether or not there was any change with respect to this drop foot condition following the second surgery?

"A Yes, sir. About two or three days after surgery this lady noted she was able to raise her foot up, which she had not been able to do for several years; also the numbness on her leg had markedly improved.

"Q * * * Did you notice any other improvement * * * in her condition as a result of that second surgery?

"A Yes. She had much less pain than she had been having before. It made quite a bit of improvement in general."

As a result of this fourth operation appellant no longer needs the foot brace she previously had to wear. The treatment resulted in expenses of $1995.44, part of which was compensated for by appellant's husband's insurance. Further treatment is still indicated, according to Dr. Shaw.

The Board made findings of fact in accord with the foregoing statement of facts, and then rendered the following conclusion of fact:

"VI

"The Board finds that at the time of the partial permanent disability rating of 1965 by the panel of physicians in Boise, the attending physician, E. B. Shaw, M. D., Pocatello, and the consulting neurosurgeon, George Barnard, M. D., Idaho Falls, there was no error

or mistake concerning the condition of the claimant, and that the claimant was in fact surgically healed and no further surgical procedure at that time was indicated (reports of various physicians, Board file stipulated in evidence; testimony of E. B. Shaw, M. D., trans., p. 27, lines 4 et seq.) The Board further finds that the claimant, since the rating by the physicians, and the lump sum agreement, underwent a change of condition between that time and approximately one year later."

and the following conclusions of law:

"I

"It is the ruling of this Board that the claimant has not sustained her burden of proving that there is any ground for setting aside the lump sum agreement entered into between the parties and duly approved by the Board on September 13, 1965; that the claimant has wholly failed to establish any sufficient grounds required under the statutes and decisions in this jurisdiction in that claimant has failed to prove fraud on the part of the defendants, or any representative of said defendants, or either of them, or any of the physicians.

"II

"It is the further ruling of this Board that the claimant has wholly failed to sustain her burden of proof that there was any mistake in fact, or otherwise, of the physicians who treated or examined her prior to execution of the lump sum agreement, and at that time advised

her that no additional surgical procedure was indicated."

Appellant, through her assignments of error, recognizes, among others, the two issues which will resolve this appeal:

(1) Was her condition a continuing one which was previously overlooked, or a "change of condition" as determined by the Board?

(2) If this was not a "change of condition," is an honest mistake of fact on the part of all concerned, sufficient to set aside a Workmen's Compensation Release?

CHANGE OF CONDITION

I.C. § 72–607 [1] provides that a compensation award may be reviewed and modified on the basis of a change of condition *unless there is a lump sum settlement as provided by I.C. § 72–321* [2]. Therefore, it is incumbent on appellant, in the context of this case, to establish that there was *no* change in condition.

To establish her theory, the appellant cites the testimony of Dr. Shaw as "admitt[ing] directly that the advice given by himself and the other doctors subsequent to the third operation was obviously in error." The question and answer alleged to sustain this position were:

"Q Doctor, based on reasonable medical certainty and based upon your observation of the patient in the second surgery performed by you, do you have an opinion as to whether the advice that was given following the January, 1965 operation, that no

1. 72–607. Modification of awards and agreements—Time within which made. —On application made by any party within four years of the date of the accident causing the injury, on the ground of a change in conditions, the board may at any time, but not oftener than once in six months, review any agreement or award, and on such review may make an award ending, diminishing or increasing the compensation previously agreed upon or awarded, subject to the maximum and minimum provided in this act, and shall state its conclusions of fact and rulings of law, and immediately send

to the parties a copy of the award, but this section shall not apply to a commutation of payments under section 72–321.

2. 72–321. Lump sum payments.—Whenever the board determines that it is for the best interest of all parties, the liability of the employer for compensation may, on application to the board by any party interested, be discharged in whole or in part by the payment of one or more lump sums to be determined by or with the approval of the board. * * *"

further surgery could help this lady, might have been somewhat in error?

"A Well, this lady certainly gained a lot of benefit from my second operation there is no question about that."

However, on cross-examination Dr. Shaw testified:

"Q Now, had she not had a change in condition following that [final rating by the panel of doctors] then, of course, the rating would have been accurate?

"A It would remain unchanged.

"Q *In other words, what you are saying, she has had a change of condition?*

"A *This is correct.*" (emphasis added)

Thus, the questionable construction appellant would place on Dr. Shaw's direct testimony is completely refuted by his testimony on cross-examination.

In further support of her theory appellant points out that after the fourth operation her "drop foot" condition ceased and therefore the factors causing the condition must have existed at the time of her final evaluation. Dr. Shaw also testified, however, the appellant's condition had considerably worsened within the six weeks prior to his seeing her in 1966.

■ In the face of what was barely conflicting evidence, the Board ruled there *had* been a *change* in condition. This court's authority to review the findings of fact made by the Industrial Accident Board is limited. See Idaho Const. Art. 5, sec. 9; I.C. § 72–608. Certainly findings of fact supported by substantial, competent evidence will not be reversed. I.C. § 72–609; Bennett v. Bunker Hill Company, 88 Idaho 300, 399 P.2d 270 (1965); Duerock v. Acarregui, 87 Idaho 24, 390 P.2d 55 (1964); McBride v. J. R. Simplot Company, 92 Idaho 274, 441 P.2d 723 (1968); Davis v. Schmidt Brothers, Inc., 92 Idaho 312, 442 P.2d 448 (1968).

■ A "change of condition" is not a sufficient ground for setting aside a lump sum settlement. A contrary rule would invalidate the proviso to I.C. § 72–607. This specific issue was dealt with in Limprecht v. Bybee, 76 Idaho 293, 297, 281 P.2d 1047, 1049 (1955), wherein the court said:

"The effect of [I.C. § 72–607 and I.C. § 72–321] is to make a lump sum settlement final and not subject to review * * *."

## MISTAKE OF FACT

A determination that appellant underwent a change of condition is all that is necessary for a resolution of this case. However, appellant earnestly argues that the doctors made an honest mistake of fact, constituting constructive fraud, in appraising her condition upon which the lump sum settlement was based.

Initially, any findings of a change in condition, as was made by the Board in this case, inherently contradicts an argument that there was a mistake of fact in the original appraisal of appellant's condition. There can be no mistake of fact if there has been a change in condition.

Secondly, the cases upon which appellant relies for the proposition that a release can be set aside on a showing of an honest mistake of fact, are inapposite. The cases cited by appellant, such as Estes v. Magee, 62 Idaho 82, 109 P.2d 631 (1940); Heath v. Utah Home Fire Insurance Company, 89 Idaho 490, 406 P.2d 341 (1965); and Ranta v. Rake, 91 Idaho 376, 421 P.2d 747 (1966), are not cases which construe Workmen's Compensation Law.

■ Where the surety, the employer and the claimant enter into a settlement agreement and the agreement is approved by the Board the agreement has the same force and effect as a final award by the Board. Such an agreement, then, cannot be set aside absent a showing of *fraud,* unless

an appeal is taken to this court within 30 days. I.C. § 72–608; Rodius v. Coeur d'Alene Mill Co., 46 Idaho 692, 271 P. 1 (1928); Bower v. Smith, 63 Idaho 128, 118 P.2d 737 (1941); Pruett v. Cranston Chevrolet Co., 63 Idaho 478, 121 P.2d 559 (1941); Zapantis v. Central Idaho M. & M. Co., 64 Idaho 498, 136 P.2d 154 (1943); Limprecht v. Bybee, 76 Idaho 293, 281 P.2d 1047 (1955). Whatever may be construed as "fraud," it certainly is not an unproven allegation of unintentional mistake.

The order of the Industrial Accident Board is affirmed. Costs to respondents.

McFADDEN, C. J., and McQUADE, DONALDSON and SHEPARD, JJ., concur.