499 P.2d 569

Richard MARTIN ESTATE, Claimant-
Appellant,

v.

Robert W. WOODS, d/b/a Woods Lumber
Company, and Argonaut Insurance Com-
pany, Defendants-Respondents.

No. 10672.

Supreme Court of Idaho.

June 2, 1972.

Stephen Bistline, Sandpoint, for claimant-appellant.

Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-respondents.

McFADDEN, Justice.

On May 1, 1962, Richard Martin was employed by Robert W. Woods. He was married and the father of two minor children. On that date he sustained grievous multiple injuries in an industrial accident arising out of his employment.

Martin had been drawn into a winch in the lumber company's operation. He sustained the loss of his right eye, his right arm was badly broken and ultimately was rendered useless, two fingers of his right hand were lost, his right thumb broken, five of his right ribs were broken with complications, he sustained multiple fractures of his right facial and skull bones, with severe avulsion of the skin of his face and scalp.

He was first treated by Dr. Marienau of Sandpoint who because of the nature and severity of the injuries, placed him under the care of three specialists in Spokane, Washington. Martin was hospitalized in Spokane and while there was treated by Dr. Gates, an opthalmologist, Dr. Maris, an orthopedic surgeon, and Dr. Hamacher, a specialist in the field of plastic surgery. He remained in the Spokane hospital for over a month, was readmitted at the end of September, 1962, for surgery on his right arm, and following that was discharged October 5, 1962. In December, 1962, he was again readmitted for surgery on his jaw. He was also being treated by Dr. Marienau during the interims that he was out of the hospital in Spokane.

The treatment by Dr. Marienau continued until October of 1963, when Mr. Martin met his death on a hunting trip.

In June, 1962, Martin filed his claim and petition for hearing with the Industrial Accident Board. Initially, respondent Argonaut Insurance Company, which had been Woods' surety, disclaimed liability on the ground that its contract with Woods had lapsed prior to the accident. The Board dismissed Argonaut, and an action was filed in the district court against Argonaut, seeking adjudication of its liability, which action was dismissed. On appeal to this Court, the district court dismissal was reversed and the cause remanded for trial on the issue as to whether Argonaut was the surety for Woods at the time of the accident. *See* Martin v. Robert W. Woods Lumber Co., 90 Idaho 105, 408 P.2d 474 (1965); and Martin v. Argonaut Ins. Co., 90 Idaho 107, 408 P.2d 475 (1965). Following trial on the merits, after remittitur, the district court held that Argonaut was the surety for Woods and was obligated as surety under its contract. This district court judgment was affirmed by this Court on appeal. Martin v. Argonaut Ins. Co., 91 Idaho 885, 434 P.2d 103 (1967).

After the 1967 decision by this Court, Mrs. Martin, the widow of Richard Martin, as the administratrix of his estate, petitioned the Board seeking an award based on specific indemnities for Mr. Martin's injuries, and for an award of total temporary benefits and reasonable attorney's fees. Respondents by their answer to the petition, alleged that following the 1967 decision of this Court, Argonaut, after receipt of medical and hospital records, and after the estate proceedings had been instituted, paid in full all hospital, medical and kindred expenses, plus payment of total disability compensation from the time of the accident to Martin's death. Argonaut then took the position that Martin's injuries were of such a nature that he was to be considered as totally and permanently disabled.

The Board held a series of hearings dealing with the issues presented. Two members of the Board, Mr. Defenbach and Mr. Geddes, conducted a hearing at Sand-

point, Idaho, on June 25, 1969, where the testimony of Dr. Fred Marienau was taken. The depositions of Dr. Edward M. Hamacher and of Dr. Robert W. Maris, both of Spokane, were taken on August 11, 1969, before Mr. Defenbach, as a continuation of the June 25 hearing held at Sandpoint. The final hearing was held at Coeur d'Alene on October 13, 1969, before board members Defenbach and Brown, at which time the testimony of Mrs. Martin was taken. Various exhibits were admitted during the course of these hearings, including the full medical reports of the doctors, the records of hospitals, and other items.

The Board in its findings traced the complex history of this claim before the Industrial Accident Board, the District Court and the Supreme Court, and entered the customary findings as to the status of the employee, his background, the facts concerning the accident and a recitation of the nature of his injuries and his medical treatment at the hands of the doctors and the treatment he received in the hospital. The Board found that the decedent had incurred numerous hospital, medical and kindred expenses and that they had been paid by Argonaut in the amount of $4,575.-12, in addition to Argonaut having made payments for total disability for the period of May 1, 1962, to October 20, 1963, in the amount of $3,139.42. The Board approved all of the payments so made.

In its conclusions of law, the Board held that from the date of the accident, until his death in October, 1963, Mr. Martin was totally disabled, and that at the time of his death Mr. Martin was totally and permanently disabled, and that payment by the surety of the total disability payments satisfied the obligation of the employer and surety. The Board further held against appellant's claim that the estate was entitled to additional payments on the basis of specific indemnities under I.C. § 72–313. The Board's conclusion of law 4 reads:

"The Board further concludes that specific indemnity losses attributable to the industrial accident of May 1, 1962, sustained by the decedent, Richard Martin, in this case, loss of the right eye by enucleation and loss of the use of the right arm, in addition to impairative [sic] ratings to specific indemnities as provided under Section 72–313, Idaho Code, for other enumerated multiple injuries constitute multiple injuries which are the basis of the total permanent disability herein, and in that instance and as applied herein, cannot survive to the estate of the decedent as does a permanent partial disability as previously announced by the Supreme Court of the State of Idaho; it is therefore the conclusion of this Board that specific indemnities under Section 72–313, Idaho Code, or under Section 72–311, Idaho Code, when combined to constitute a total and permanent disability, cannot survive to the estate and only survive in the event of a specific indemnity loss or comparative rating based upon a specific indemnity loss which would constitute a disability less than total, to-wit: A permanent partial disability, which, is not the case herein."

The Board then, in its order, held that the appellant take nothing in addition to the payments previously made by the surety.

The principal issue presented by appellant's assignments of error is the determination by the Board that the decedent, Martin, suffered a total and permanent disability as a result of the industrial accident.

Appellant, in effect, asserts that the record fails to sustain the Board's finding and conclusion that at the time of decedent Martin's death he was totally and permanently disabled. She contends that there is no dispute in the record and hence that this Court should make this determination unfettered by the findings by the Board. She further asserts that inasmuch as the testimony of Dr. Hamacher and Dr. Maris was taken only before Mr. Defenbach of the Board, the other board members had to

consider this evidence from the deposition, and this Court is in as good a position to make the factual determination as was the Board, when only one member heard the testimony.

While there is authority that this Court is not bound by findings of the Board based on a written record (Graves v. American Smelting & Refining Co., 87 Idaho 451, 394 P.2d 290 (1964); In re Markham's, Inc., 79 Idaho 307, 316 P.2d 553 (1957)), this principle is not applicable in this instance. It is to be recalled that the testimony of Dr. Marienau, one of the appellant's witnesses, was taken before two members of the Board.

 This Court has held that the weight and credence to be given the testimony of a witness heard by the Board is for the Board to determine. In such case the Board's findings, when supported by substantial competent evidence, must be sustained even though there may be other conflicting evidence. In re Sutton v. Brown's Tie & Lumber Co., 83 Idaho 265, 361 P.2d 793 (1961). Thus, any finding of fact by the Board which is based upon the testimony of Dr. Marienau, whose testimony was heard by two members of the Board, would be binding on this Court, provided it was substantial and competent.

The Board's finding of fact incorporated the following testimony of Dr. Marienau:

> " 'He [Mr. Martin] had some definite permanent injuries. He had lost his right eye, it was completely gone. He had a permanent injury to his right arm, poorly healed fractures, lost two fingers on that hand, had fractures that had healed in his wrist and his upper arm, were deformed. He had a nerve injury to his radial

nerve which paralyzed most of the muscles in his lower arm and hand.'

"In addition to the foregoing, Dr. Marienau further described additional injuries as follows:

> 'He had had a fractured jaw with his original injury and fractured upper jaw and lower jaw. He had some adhesions and loss of motion in his jaw. He could open his mouth very little, he had much difficulty chewing. He had much facial deformity from the injuries to his facial bone and to the facial skin and much scarring. He had some deformed ribs and he had much pain in his chest where he had had broken ribs.'

"Dr. Marienau, the attending physician, testified that the foregoing disabilities were permanent, and established, in his opinion, as of October, 1963, when he last saw the deceased workman as substantiated by the following:

> 'Q. I take it, Doctor, that at the time you last saw Richard Martin, now deceased, from your testimony that in your opinion the symptoms and disabilities which you found at that time were fixed and regarded as permanent disabilities; is that correct?
>
> A. I regarded them as such.
>
> Q. Any additional improvement beyond that time in the future will be minimal or nominal; is that correct?
>
> A. Yes.
>
> Q. At least in your opinion?
>
> * * *.' "

It is thus established that Mr. Martin's injuries were of a permanent nature.[1]

The Board in considering the record then proceeded to the next step and made

---

1. The record reflects, however, that both Dr. Hamacher and Dr. Maris had contemplated further treatment of Mr. Martin. It is recognized ·that the surgical procedures contemplated by Dr. Hamacher probably would have alleviated the problem of Mr. Martin's jaw. Following the accident, Mr. Martin could only open his mouth approximately half an inch. Dr. Hamacher testified that following the proposed operation Mr. Martin would have been able to open his mouth normally had the operation been performed. Dr. Maris testified that had he the opportunity to do further work, he could have restored some movement in the remaining fingers of the right hand.

its determination that Martin had not only sustained injuries of a permanent nature, but that he was totally and permanently disabled. The Board found:

"* * * that at the time of the death of the decedent the injuries and disabilities, for the most part, were permanent in nature with the exception of a probability of improvement insofar as the function of the injured workman's jaw was concerned * * *. The Board further finds that the injuries sustained by Richard Martin as a result of the industrial accident rendered him virtually totally disabled, on a permanent basis, with the exception of opportunity to obtain very sedentary type of work, or light work, by sympathetic employers or relatives. The Board finds on the basis of the record, taken as a whole, that it could not be reasonably anticipated that Richard Martin, due to permanent disabling injuries, could reasonably compete upon the labor market for gainful employment except on a highly restricted basis. * * *"

Appellant takes exception to the Board's determination in the foregoing finding that Martin was totally and permanently disabled, pointing to the fact that Mr. Martin did do some work around his home, drove his car, and had he lived would have received further surgical procedures.

Appellant's position in this regard, however, overlooks the criterion to be applied in resolution of the issue of whether or not a particular claimant is permanently and totally disabled. This Court has held

"* * * by total disability is not meant that the injured person must be absolutely helpless or entirely unable to do anything worthy of compensation. An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonable stable market for them does not exist, may well be classified as totally disabled." Arnold v. Splendid Bakery, 88 Idaho 455, 463, 401 P.2d 271, 276 (1965).

Crawford v. Nielson, 78 Idaho 526, 307 P. 2d 229 (1957); Endicott v. Potlatch Forests, 69 Idaho 450, 208 P.2d 803 (1949).

■ Dr. Maris's testimony was closely allied with this Court's statement as to the definition of total disability by this Court in Arnold v. Splendid Bakery, *supra*. Dr. Maris stated:

"Mr. Martin's present difficulties make it impossible for him to carry out any work in the manual labor category since he really has only one effective upper extremity to utilize and therefore, I would expect that his employability would be quite restricted in the general labor market considering his work background and education."

This unrefuted testimony of Dr. Maris, together with the testimony of Dr. Marienau as to the extent and permanent nature of Mr. Martin's injuries, fully sustain the Board's findings. We cannot disturb the finding of the Board based on Dr. Marienau's testimony, it being supported by the record. Bennett v. Bunker Hill Co., 88 Idaho 300, 399 P.2d 270 (1965); Bradshaw v. Bench Sewer Dist., 90 Idaho 557, 414 P.2d 661 (1966). Dr. Maris's testimony is not refuted. Thus, we find no error in the Board's determination.

The underlying problem facing appellant in this appeal is the fact that this Court has held that claims for specific indemnity for permanent injuries survive the death of the claimant (Peterson's Estate v. J. R. Simplot Co., 83 Idaho 120, 358 P.2d 587 (1961)), but there is no holding by this Court that benefits for total permanent disability survive the death of the injured workman.

Idaho, in allowing survivability of unaccrued claims for specific indemnity for permanent injury, is apparently in the minority of jurisdictions in this country. 2 Larson's Workmen's Compensation Law, § 58.40, p. 88.93. We find no authority, nor has our attention been called to any, reflecting any legislative intent that a claim for total permanent disability should sur-

vive the death of the employee. In its opinion in the case of Peterson's Estate v. J. R. Simplot Co., *supra*, this Court in effect distinguished between the situation involving a specific indemnity for certain injuries based on the provisions of I.C. § 72–313 (which survives the death of the employee) and the case of a total permanent disability. In that opinion the Court stated:

> "Survivability of a claim for specific indemnity for permanent injury is grounded upon actual or comparable loss or physical impairment, and not upon loss of earning power or capacity to work." 83 Idaho 120, 125, 358 P.2d 587, 590 (1961).

■ Under the provisions of I.C. § 72–313 the award is not based upon any "loss of earning power" but the award is made because of a statutory provision. However, in the case of a total permanent disability the award is made to make good the loss of the earning power or capacity to work on account of the injury. (See Endicott v. Potlatch Forests, 69 Idaho 450, 208 P.2d 803 (1949); Peterson's Estate v. J. R. Simplot Co., *supra*.) The obligation of the employer and surety is to make those payments during the period of the employee's disability. Upon his death, of course, such obligation terminates. Thus it is the opinion of the Court that the employer and surety were obligated to pay for the permanent total disability of decedent only during his lifetime.

■ In argument appellant alludes to the fact that Argonaut initially declined to recognize its liability, and because of this the doctors who were caring for decedent were unwilling to proceed with further operative procedures which would have alleviated decedent's condition. It is then suggested that because of Argonaut's refusal to authorize such medical procedures it should not now be heard to complain as to appellant's seeking of an award for specific indemnity. In response to this argument, it is to be recalled that until such time as the opinion of this Court affirming

the district court judgment in the case of Martin v. Argonaut Ins. Co., 91 Idaho 885, 434 P.2d 103 (1967), Argonaut had not as yet been determined to be the surety for Woods Lumber Co., the employer. Under these facts appellant's position in this regard is not well taken. As is stated in 2 Larson's Workmen's Compensation Law, § 58.20, p. 88.75–88.76:

> "This seems to make the most-favorable-remedy rule mean in effect that the particular claimant must take the remedy that would usually be most favorable to claimants in general, although in his peculiar circumstances it may not be so to him."

■ Appellant further asserts that she is entitled to an award of attorneys fees under the provisions of I.C. § 72–611, which provides:

> "If the board or any court, before whom any proceedings are brought under this act determines that the employer or his surety contested a claim for compensation made by an injured workman or dependent of a deceased workman without reasonable ground, or that an employer or the employer's surety neglected or refused within a reasonable time, after receipt of a written claim for compensation, to pay to such claimants or to dependents in cases where the workman is killed as a result of a compensable accident the compensation provided by law, the employer or such employer's surety shall pay reasonable attorney fees in addition to the compensation provided by this chapter. In all such cases the fees of attorneys employed by injured workmen or dependents of deceased workmen shall be fixed by the industrial accident board."

The record discloses that promptly upon receipt of the statements of medical, hospital and kindred expenses, and of the appointment of an administratrix, Argonaut paid in full such expenses, as well as the full temporary total disability payments from the date of injury to decedent's death. These facts negate any contention

that Argonaut, as the surety, refused within a reasonable time to pay such claims. Argonaut in defending in the district court and on appeal to this Court the action instituted against it by Martin and Woods Lumber Company, for a declaratory judgment as to its liability cannot be said to have "contested a claim for compensation made by an injured workman or dependent of a deceased workman without reasonable ground." The findings by the Industrial Accident Board, and its conclusions in regard to denial of the request for attorneys fees are fully supported by this record.

The order of the Industrial Accident Board is affirmed. Costs to respondent.

McQUADE, C. J., DONALDSON and SHEPARD, JJ., and HAGAN, District Judge, concur.