737 P.2d 459

Charles BRANNON, Plaintiff-Appellant,

v.

Emil F. PIKE, Jr.,
Defendant-Respondent,

and

Idaho Special Indemnity
Fund, Defendant.

No. 16396.

Supreme Court of Idaho.

April 9, 1987.

Patricia D. Gaw, Wendell, for plaintiff-appellant.

John W. Barrett and Thomas V. Munson, Boise, for defendant-respondent.

HUNTLEY, Justice.

This appeal presents the issue of whether the Idaho Industrial Commission or the district court has jurisdiction to hear a claim by a client against his attorney for alleged breach of contract of representation in a workers' compensation claim.

Subsequent to the disposition of his workers' compensation claim before the Industrial Commission, Charles Brannon filed a complaint in district court against Emil Pike, his former attorney, alleging breach of contract and fraudulent alteration of the attorney employment contract. Brannon had hired Pike to represent him in a workers' compensation action against Brannon's employer. Brannon alleges that he and Pike had orally agreed that Pike would take 10% of Brannon's recovery as his fee, and that Pike, without authorization from Brannon to do so, made alterations in the written attorney employment contract to provide that Pike would be paid 33⅓% of the Brannon recovery claiming that a lesser percentage had been agreed upon when he signed the contract.

Pike filed a motion to dismiss for lack of jurisdiction over the subject matter, urging that the Industrial Commission has exclusive jurisdiction to decide this claim. The district court granted the motion to dismiss, holding that the Industrial Commission was vested with exclusive jurisdiction pursuant to I.C. §§ 72–803, –804, –201, –210, –733 and –735. Brannon appeals.

At the outset, we note that no statute or case law is specifically on point or controlling in this matter. Instead, we have for guidance only the general statutory scheme embodied in the workers' compensation law.

The Idaho Industrial Commission is vested with original and exclusive jurisdiction over the entire field of personal injury claims against employers arising out of employment by virtue of I.C. § 72–201.[1]

1. I.C. § 72–201 reads:
  72–201. **Declaration of police power.**—The common law system governing the remedy of workmen against employers for injuries received and occupational diseases contracted in industrial and public work is inconsistent with modern industrial conditions. The welfare of the state depends upon its industries

(See also, *Johnson v. Falen,* 65 Idaho 542, 149 P.2d 228 (1944).) Admittedly, the resolution of this claim by a client against his attorney for breach of contract arising out of a workers' compensation claim is a matter ancillary to the general field of compensation claims against employers. However, portions of the workers' compensation statutes indicate legislative intent that it is the Industrial Commission, and not the district court, which has jurisdiction where a dispute arises between the client-claimant and his attorney. I.C. § 72–803 reads: "Claims of attorneys and claims for medical services and for medicine and related benefits shall be subject to approval by the commission." Brannon argues that I.C. § 72–803, while granting the commission exclusive jurisdiction over claims of attorneys arising out of workers' compensation claims, does not grant jurisdiction over disputed claims of clients *against* the attorneys representing them in the particular context here involved. However, such a narrow reading of I.C. § 72–803 would lead to the multifarious treatment of substantially similar claims. We cannot conclude that such was the intent of the legislature.

Additionally, I.C. § 72–804 provides that, under certain circumstances, an employee claimant is to be awarded attorney fees from an employer not dealing in good faith with the claim. Such an award is determined by the Industrial Commission. I.C. § 72–210 further provides for attorney fees when an employer has failed to secure insurance as mandated by law. These code sections evince a general legislative scheme whereby attorney fee issues closely related to the substance of the workers' compensation claims are to be resolved by the Industrial Commission.

It is also well-established that the Industrial Commission is vested with jurisdiction over general claims of fraud occurring in the workers' compensation context. I.C. § 72–719(1)(b); *Fountain v. T.Y. and Jim Hom,* 92 Idaho 928, 453 P.2d 577 (1969).[2]

Moreover, the workers' compensation law grants to the district courts only very limited powers to *enforce* the collection of Industrial Commission awards. I.C. § 72–735. Further, I.C. § 72–733 indicates that the district courts have no authority to disturb the decisions of the Industrial Commission and further admonishes the district courts not to "restrain or interfere with … the [Industrial Commission's] performance of its duties."

Brannon cites several non-persuasive authorities in an effort to bolster his assertion that jurisdiction must lie with the district court. Without exception, each case cited by Brannon has no application to the case at hand. Brannon cites *Whitney v. Randall,* 58 Idaho 49, 70 P.2d 384 (1937), as authority for the proposition that the district court has jurisdiction over this matter. *Whitney, supra,* involved an action to quiet title, with the issue being whether the district court or the probate court had jurisdiction to decide the competency of the seller. Like the trial court before us, we can discern no relevance of *Whitney* to the instant case. Brannon next cites to *State v. Finch,* 79 Idaho 275, 315 P.2d 529 (1957). As with *Whitney, Finch* casts no light upon the resolution of the instant matter. In *Finch,* we held that where the Dredge Mining Protection Act contained no valid provision for appeal from an order of the Board of Land Commissioners regarding a defendant's property rights, defendant's due process rights were violated. As neither the method nor the availability of appeal is at issue in the instant case, the holding in *Finch* is not on point.

and even more upon the welfare of its wageworkers. The state of Idaho, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for injured workmen and their families and dependents is hereby provided regardless of question of fault and to the exclusion of every other remedy, proceeding or compensation, except as is otherwise provided in this act, and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as is in this law provided.

2. Fraud is not an issue in the instant case, however, as Brannon did not adequately plead fraud in his complaint.

Next, Brannon cites a trio of cases which, arguably, have some relevance: *Martin v. Argonaut Insurance Co.,* 90 Idaho 107, 408 P.2d 475 (1965); *Thompson v. Liberty National Insurance Co.,* 78 Idaho 381, 304 P.2d 910 (1956); *Hancock v. Halliday,* 65 Idaho 645, 150 P.2d 137 (1944). In *Martin, supra,* and *Thompson, supra,* we held that the Industrial Commission had no jurisdiction to decide whether there existed valid insurance coverage as between the employer and the putative insurance carrier. In *Hancock, supra,* the employee was allowed to pursue in district court a claim of negligence against doctors who had treated him subsequent to an industrial accident. While the employee's claim against his employer was subject to the exclusive jurisdiction of the Industrial Commission, we noted that "[t]he condition complained of is not the proximate result of the accident, but it is the proximate result of the negligent act of the physicians who treated the injury." 65 Idaho at 652, 150 P.2d at 144. We further noted that an opposite conclusion "... would permit the wrongdoer to go practically unscathed for grievous damage to another, and would likewise sentence the workman to a lifetime of drear and hopeless existence through inability to work and live a normal life, because of a maimed body, with his only compensation limited to a sum totally inadequate to cover his sustained losses." 65 Idaho at 652, 150 P.2d at 144.

The instant case does not implicate the policy concerns found in *Hancock.* Here, Brannon's ability to gain meaningful relief will not be jeopardized in Industrial Commission proceedings. Additionally, we note that each of the claims litigated in *Martin, Thompson* and *Hancock* were unrelated claims as between the client-claimant and his attorney in a true sense, requiring adjudication of claims involving third parties. Also, the district court was available as an appropriate forum for determination of insurance coverage at least in a declaratory judgment context. Critical here is the factor that Brannon's attorney, Pike, is not unrelated to the claimant as is the employer's surety. Both the employee and his

attorney are from the outset subjected to the jurisdiction of the commission.

We also note that *Heese v. A & T Trucking,* 102 Idaho 598, 635 P.2d 962 (1981), cited by both Brannon and Pike, is of little help in resolving this matter. In *Heese,* we held that the Industrial Commission did not, and did not need to, resolve the issue of whether a valid insurance contract existed, holding only that the Industrial Commission did not exceed its jurisdiction by finding that the employer had failed to file a notice of security justifying the imposition of a penalty.

In view of the uniquely broad grant of original and exclusive jurisdiction over workers' compensation matters given to the Industrial Commission, and the fact that I.C. § 72–803 confers upon the commission the jurisdiction to resolve claims for attorney fees, we conclude that there exists a legislative intent that jurisdiction over claims by a client against his attorney arising out of their fee agreement in a workers' compensation case is properly with the Industrial Commission, and not the district court. Accordingly, the trial court's order granting Pike's motion to dismiss for lack of jurisdiction over the subject matter is affirmed. Costs to respondent. No attorney fees on appeal.

SHEPARD, C.J., and DONALDSON, J., concur.

BAKES, J., concurs in the result.

BISTLINE, Justice, not joining the Court's opinion, but concurring in the Court's judgment affirming the district court.

## I.

The reason for not joining the Court's opinion is not based on any disagreement with the conclusion that it is the Industrial Commission which should decide the issue. Note may be taken that that has been my view of the law long before this appeal. Almost all of that found in the Court's opinion finds me in agreement.

Now, let it be understood at the outset that if the opinion did not mention *Martin*

and *Thompson* as standing for the proposition that the Industrial Commission is without jurisdiction to decide an insurance coverage issue as between the employer and the (alleged) surety, Maj. op., 112 Idaho p. 940, 737 P.2d p. 461, it would have been possible for me to concur.

The problem presented, however, and not a small one, is that the Court takes for granted that the *Martin* case and the *Thompson* case are alike. In truth and fact they are not alike, or even close to being alike. The claimant in *Thompson* had no interest whatever in the litigation between his employer and the employer's surety. The insurance coverage issue was *not* in *Martin* a dispute between only the employer and its (alleged) surety. As will be pointed out *infra, the injured claimant* was involved in both litigating the insurance coverage issue in both the Commission proceedings and in district court. It can be said without the fear of any contradiction that that claimant was by far the most interested party in the litigation in the two forums. It was only in the Commission that claimant could have achieved the sure and certain relief which according to law "is hereby provided ... to the exclusion of every other remedy ... except as provided in this act, and to that end all civil actions and civil causes of action for such personal injuries *and all jurisdiction of the courts ... are abolished....*" I.C. § 72–201.

In the case of *Martin v. Argonaut,* solely by reason of Commission error and Supreme Court ignorance or apathy, Martin in his lifetime never received any relief, and on his death what trickled down to his family was a pittance. A lesson was to be learned, but this Court has not yet learned it, and once again eschews an opportunity to do so. The sure and certain pittance which Martin's family did obtain came almost six years after his injury and four and one-half years after his death.

True, the Court this day correctly takes the judicial system out of the act under the facts of this case. But equally true, it cannot be denied that the *Martin* case is responsible for having sent the claimant down the wrong path. Equally and sadly true, it does not appear that the Court is familiar with the *Thompson* and *Martin* cases which it cites. Although it seems that on another occasion an attempt was made to rectify that problem (perhaps not, or not well enough done), it should be attempted again. This *Brannon* case should be serving as the appropriate vehicle for overruling the *Martin* case which held that the Industrial Commission did not have jurisdiction to determine an insurance coverage issue where the primary party involved was a *claimant* pursuing the "sure and certain" relief promised him by § 72–701.[1]

## II.

A compelling majority of the courts have held that industrial commissions are necessarily endowed with the authority to determine contractual issues when necessary. *See, e.g., International Piling, Inc. v. American National Fire Insurance Co.,* 345 So.2d 761 (Fla.App.1977) (commission has jurisdiction to determine existence of insurance coverage); *St. Paul Fire & Marine Insurance Co. v. Littky,* 60 Mich.App. 375, 230 N.W.2d 440 (1975) (determination of liability of insurance company is for commission); *Greene v. Spivey,* 236 N.C. 435, 73 S.E.2d 488 (1952) (commission has jurisdiction to determine existence of insurance coverage); *Rockwood Insurance Co. v. Workmen's Compensation Appeal Board,* 45 Pa.Cmwlth. 109, 405 A.2d 569 (1979) (board may decide whether insurer's power to cancel has any legal effect).

Moreover, even if this were not so, one would wonder why our legislature deemed it appropriate to require that one member

---

1. It is my suggestion that a walk through any available dictionary is in order. One definition distinguishing "sure" from "certain" which appears very satisfactory is: "marked by complete dependability or reliability (as in fulfilling ex-

pectations, hopes or trust)." Where the legislature added "sure" to relief which was also to be "certain," it is logical to believe that "sure" was used in the sense of urgency, *i.e., right now,* not

of the Commission be learned in law.[2] That the legal member of the Commission possesses all of the qualifications which are required of district judges and Supreme Court Justices is of no small significance. In addition, the legal member is immeasurably aided by the other two members who, although not admitted to the bar, have a vast accumulation of knowledge and experience in such matters, which compacted, might be called plain common sense and intuitive fairness.

Applicable here is the Court's statement in *Thompson* that "[a]s between claimant ... the employer and the surety, the Board has jurisdiction to determine the liability, if any, to claimant and enter an award against employer and the surety." 78 Idaho at 384, 304 P.2d at 911. In that case, too, the surety denied coverage, *but the employer admitted liability and paid compensation benefits* prior to an Industrial Accident Board hearing which involved only the dispute between the employer and the surety. The vitally interested party, which of course was the employee, was out of it and no longer involved. The employer pursued its contractual rights against the surety in district court. On appeal this Court simply held, with which all should agree, that "the contract relationship of the employer and the surety was no longer a subject of controversy for the Board to determine." *Id.* Thus *Thompson* was properly said to have involved *a matter of contribution,* over which the Board did not have jurisdiction, and its determination was held not *res judicata* [3] which, of course, it was not nor did

it purport to be. Citations of authority in the opinion and statements of this Court there made are clear manifestations of the Court's view of the Workmen's Compensation Act that, had the employer not accepted liability and taken care of his employee, that is, had there been a controversy *which involved the injured employee*, the Commission would have properly passed on the contractual issue as necessary to its *exclusive jurisdiction to entertain and expeditiously and inexpensively resolve* the workman's claim, as witnessed by this language:

> The Industrial Accident Board's jurisdiction is created by statute. As between claimant in an industrial accident case, the employer and the surety, the Board has jurisdiction to determine the liability, if any, to claimant and enter an award against employer and the surety. Sec. 72–613, I.C. As between the injured workman, the employer and the surety, the award in such cases is final unless appealed from. Sec. 72–608, I.C.; *Johnson v. Falen*, 65 Idaho 542, 149 P.2d 228.
>
> *The controversy here is not one in which the injured workman is in anywise interested.* The liability having been paid by the employer prior to the Industrial Accident Board hearing, the contract relationship of the employer and the surety was no longer a subject of controversy for the Board to determine. 78 Idaho at 384, 304 P.2d at 911 (emphasis added).

*Martin* [4] was simply a blind, unreasoned and cursory acceptance of that which the

that the claimant will get the relief some five or more years down the road.

**2.** "The third appointee shall be an attorney at law duly licensed to practice in this state." I.C. § 72–501(4). Similarly, district judges must be learned in the law. Id. Const. art. 5, § 23.

**3.** The ruling in *Thompson* did not contradict the general rule as stated in Larson. In fact, in addition to the above statement of the general rule, § 92.40 adds this illumination:

> On the other hand, *when the rights of the employee* in a pending claim *are not at stake,* many commissions disavow jurisdiction and send the parties to the courts for relief. This may occur when the question is purely one

between two insurers, one of whom alleges that he has been made to pay an undue share of an award to a claimant, the award itself not being under attack. *Or it may occur when the insured and the insurer have some dispute entirely between themselves about the validity of coverage of the policy* or the sharing of the admitted liability.
> 4 Larson on Workmen's Compensation Law § 92.40 (emphasis added) (footnotes omitted).

Here, however, it is for certain that "the rights of the employee" are at stake, *i.e.,* a diminished net monthly payment.

**4.** *Martin, Claimant v. Robert Woods Lumber Co.,* 90 Idaho 105, 408 P.2d 474 (1965). *Martin & Woods v. Argonaut Insurance Co.,* 90 Idaho 107, 408 P.2d 475 (1965).

surety represented to the Court was the *Thompson* conclusion, *without any regard whatever for the difference in the parties involved.* The Court's failure to recognize this crucial difference resulted in an aberration; *Martin is the only case cited by Larson as being contrary to the general rule.* 4 Larson on Workmen's Compensation law § 92.40 at 17–21 n. 46 and Cumulative Supplement. The Court today advances no reason for not overruling *Martin* and align with the absolute weight of authority which holds that the Industrial Commission can and should determine the contractual issue when it is necessary to do so *in reaching and determining the employee's right* to the "sure and certain relief" promised by the fine-sounding resonant tones of the preamble to the Workmen's Compensation Act.

As will be noted in the *Martin* cases, *Martin v. Robert W. Woods Lumber Co.,* 90 Idaho 105, 408 P.2d 474 (1965) was an appeal from the Commission's ruling. Martin, who properly proceeded against both his employer and alleged surety, asserted that the Commission erred in holding that it did not have jurisdiction. At the same time Martin, the claimant *and* Woods, the employer, joined in a companion appeal. *Martin v. Argonaut Insurance Co.,* 90 Idaho 107, 408 P.2d 475 (1965), from a district court determination that it did not have jurisdiction to determine the jointly made claim of Martin the employee and Woods the employer that Argonaut was liable as surety for Woods.

Martin was a severely injured employee, primarily loss of one eye by enucleation, loss of use of one arm, nearly complete loss of jaw function plus other injuries, and Woods was an employer not financially able to provide the surgery that was necessary to, and would have to a large extent restored his impaired· physical functions other than the eye—all of which was well stated in *Martin Estate v. Woods,* 94 Idaho 870, 873 n. 1, 499 P.2d 569, 572 n. 1 (1972). Even though the district court on remand was to hold that Argonaut was estopped from denying coverage as Woods' surety, which was decreed and affirmed by the Supreme Court in 1967, *see Martin v. Argonaut Insurance Co.,* 91 Idaho 885, 434 P.2d 103 (1967), Martin meanwhile died without having received any of the corrective surgeries which were necessary to allow him good bodily function. Martin expired from exposure on becoming lost while hunting deer in October of 1963, some 18 months after he had been injured. The courts did not reach a final determination as to Argonaut's liability as surety until the release of the Supreme Court's opinion affirming the district court's ruling in November of 1967, going on SIX YEARS after Martin was injured and initiated his quest for the golden fleece of "sure and certain relief." [5]

---

**5.** The ironic conclusion of the *Martin* case deserves mentioning. Following his tragic death his young wife and small children attempted to collect from Argonaut the sums of money which had been due him for his specific injuries which were suffered in the industrial accident and which still affected him at his death—the surety during the course of its six years of litigation having refused to furnish the corrective surgery which was recommended. On Martin's death the surety took the position that those injuries collectively amounted to a total disability which, of course, terminated on his death (death being unrelated to his accident), and the surety promptly paid the weekly benefits which had accrued in the 18 months of elapsed time from injury to death, declaring its liability at an end. Notwithstanding that no doctor testified that Martin's disability put him in the class of totally and permanently disabled, the Commission strangely concluded that he was so disabled, and, more strangely, the Supreme Court upheld that decision, notwithstanding a footnote observation that:

> The record reflects, however, that both Dr. Hamacher and Dr. Maris had contemplated further treatment of Mr. Martin. It is recognized that the surgical procedures contemplated by Dr. Hamacher probably would have alleviated the problem of Mr. Martin's jaw. Following the accident, Mr. Martin could only open his mouth approximately half an inch. Dr. Hamacher testified that following the proposed operation Mr. Martin would have been able to open his mouth normally had the operation been performed. Dr. Maris testified that had he the opportunity to do further work, he could have restored some movement in the remaining fingers of the right hand. 94 Idaho at 873 n. 1, 499 P.2d at 572 n. 1.

There is a lesson to be learned from that case. The surety fought off responding to its liability until the bitter end—all the while inhumanely refusing the claimant the immediate corrective

What is needed today is simply that the Court, as presently constituted, do a more thorough job of reading *Thompson* than was done by the 1965 Court. On a proper reading of *Thompson* it can only be concluded that had Thompson's employer not paid Thompson's benefits and thereby removed Thompson's very keen and urgent interest in the outcome of the controversy between his employer and that employer's surety, the Commission would have properly resolved all issues brought before it in the claimant's pursuit for relief. The Court carefully noted that its ruling in the case was *"under the facts here presented,"* 78 Idaho at 384, 304 P.2d at 911, which facts in the preceding two sentences the Court noted were that "the controversy here is not one in which the injured workman is in anywise interested. The liability having been paid [to the claimant] by the employer prior to the Industrial Accident Board hearing, the contract relationship of the employer and surety was no longer a subject of controversy for the Board to determine." *Id.*

Nine years later in the companion *Martin* appeals, one of which was from a Commission ruling that it did not have jurisdiction to determine the noncontractual issue raised by Argonaut, and the other from a district court ruling that it also had no jurisdiction to determine that same issue, appellant Martin, as appears at 90 Idaho 108, 109, urged an impressive array of authority for the proposition that the Court, faced squarely with the reality that it of necessity had to reverse either the district court or the Commission, should hold that the latter was the proper tribunal in which to resolve the issue *on a claimant's* petition before it. Argonaut, however, submitted *Thompson* as Idaho authority for the proposition that the Commission never has jurisdiction over such a defense, even where the claimant is still very much a party involved in the contractual dispute between the employer and the surety. *See* 90 Idaho at 109, 408 P.2d 475.

surgery which the doctors wanted to perform. The Supreme Court audaciously so observed, and agreed that because the surgery had not

The Court, with only one member thereon who had participated in the 1956 *Thompson* decision, obviously accepted the surety's statement of the *Thompson* holding, and in doing so and not bothering to make its own research and analysis, erred grievously, and wreaked a great injustice. Today, that door is once again left open for future injustices, and once again not one member of the Court is willing to suggest any error in that which I have documented, or any error in my legal analysis and evaluation explaining why *Thompson* was good law and *Martin* was bad law based on a gross misapplication of *Thompson*. Net result: As Larson's work has pointed out, Idaho law is an aberration, standing alone.

been furnished, Martin was improperly held to be totally and permanently disabled at the time of his death.