(No. 7002. September 25, 1942.)

A. J. BIGLEY, Respondent, v. MRS. F. C. SMITH, doing business as Blue Arrow Cafe, and CHARLES SMITH, Defendants, and STATE INSURANCE FUND, Appellant.

[129 Pac. (2d) 658.]

Rehearing denied October 20, 1942.

Frank L. Benson for appellant.

Respondent not represented by counsel.

MORGAN, J.—Respondent made claim for compensation for injuries sustained by him by accident arising out of and in the course of his employment by defendant, Mrs. F. C. Smith, doing business as Blue Arrow Cafe. The Industrial Accident Board made an award of compensation in favor of claimant, from which State Insurance Fund has appealed. It makes ten assignments of error. We find it necessary to discuss only assignment numbered VIII, wherein appellant asserts: "The Board erred in failing to find that the employment in this matter was casual."

 [I] Injury arising from an industrial accident, while the employee is engaged in casual employment, is not made compensable by the Workmen's Compensation Law unless, prior to the accident, the employer elected, in writ-

ing, filed with the Industrial Accident Board, that the provisions of the law shall apply to it. Idaho Code Annotated, sec. 43-904, provides:

"43-904. Employments not covered—Election of coverage.—None of the provisions of this act shall apply to:

"* * * *

"3. Casual employment;

"* * * *

"Unless prior to the accident for which the claim is made, the employer had elected in writing filed with the board, that the provisions of the act shall apply."

[II] That section excludes "casual employment" not a "casual, or occasional, employee" from the application of the Workmen's Compensation Law. (*Flynn v. Carson*, 42 Ida. 141, 243 Pac. 818; *Orr v. Boise Cold Storage Co.*, 52 Ida. 151, 12 Pac. (2d) 270.)

Respondent's testimony shows that Mrs. Smith was the owner of four or five buildings in Twin Falls, which she rented to others for business purposes; that she employed him to repair these buildings when they needed repair; that his employment by her was not steady, but irregular, depending on one or more of the buildings needing to be repaired; that during the time the understanding and agreement existed between them, that he should repair the buildings when they required it, he worked for people other than Mrs. Smith and "If I was busy they most generally waited for me. They have waited as long as three weeks." The employment was at irregular intervals, depending on uncertain contingencies, and the amount of compensation depended on the length of time the employee was occupied at it. The injury for which respondent seeks compensation was the result of an accident which occurred while he was repairing a ceiling in a building owned by Mrs. Smith and occupied by her tenant who was engaged in a dry cleaning business, known as the "Royal Cleaners." Mrs. Smith had not elected that the provisions of the workmen's compensation law should apply to that employment.

[III] It was casual employment within the meaning of sec. 43-904, subd. 3, of our code as construed by this court. (*Orr v. Boise Cold Storage Co.*, above cited; *Rabideau v. Cramer*, 59 Ida. 154, 81 Pac. (2d) 403; *Dawson v. Joe Chester Artificial Limb Co.*, 62 Ida. 508, 112 Pac. (2d) 494; and *Ross v. Reynolds*, 64 Ida. 87, 127 Pac. (2d) 775.)

This conclusion makes a discussion of the other assignments of error unnecessary.

The order appealed from is reversed, with costs to appellant.

Budge and Ailshie, JJ., concur.

GIVENS, C.J., dissenting.—It seems to me the uncontradicted testimony herein shows the employment was not casual and clearly falls within the doctrine of *Dillard v. Jones,* 58 Ida. 273, 72 Pac. (2d) 705, authorizing the board in awarding compensation. Mr. Bigley testified:

"A. She [Mrs. F. C. Smith] is his mother. She owns the building. She owns four or five different rental buildings.

"Q. Is she one of the defendants named in this proceeding?

"A. Yes, that's his mother.

"Q. It was Charles Smith—he is the one who asked you to do this work?

"A. His mother, she hired me to do all the repair work and Charlie had the managing of it.

"Q. Manager of the repair work? ·

"A. Yes, he was manager of all the repair work. *****

"Q. You have been more or less engaged in doing repair work for the past two years, have you not?

"A. Yes.

"Q. Tell us whether or not you have worked for Mrs. F. C. Smith for about a year?

"A. It was over a year.

"Q. Did you work in different buildings owned by Mrs. Smith?

"A. Yes, I worked on different buildings.

"Q. What was the nature of this work?

"A. On the roofs.

"Q. Repair work?

"A. Repair work on the roof.

"Q. Did Mrs. Smith ask you to work on the Blue Arrow Cafe doing repair work?

"A. Yes.

"Q. Tell us whether or not most of the time you did

work for Mrs. Smith, during the year you were with her, did you work rather steadily, or did you work for other people too?

"A. I worked for other people.

"Q. Can you give us an idea about how much repair work you did for Mrs. Smith, and which building have you worked on—what building?

"A. Mostly on the Blue Arrow. The most work I done for them.

"Q. Any other building?

"A. Yes, four buildings on Shoshone.

"Q. Mrs. Smith owns quite a little property around Twin Falls?

"A. Yes.

"Q. She owns the building in which the Blue Arrow Cafe is located?

"A. Yes.

"Q. And which she was running at the time of the accident?

"A. She owned it at that time.

"Q. What are those other buildings or property that you mentioned used for?

"A. One for the Royal Cleaners and one for a real estate office.

"Q. Mrs. Smith rents one to a real estate dealer?

"A. Yes.

"Q. And another to the Royal Cleaners?

"A. Yes.

"Q. There are two more?

"A. There is Wall's Grocery.

"Q. And one other one?

"A. The other one is run by John—I can't call his name —the name of the fellow that runs it."

The board's award should be sustained. Therefore, I dissent.

I am authorized to say that Holden, J., concurs in this dissent.