635 P.2d 962

**Conrad W. HEESE, Claimant-Respondent,**

v.

**A & T TRUCKING, Employer-Appellant.**

**No. 13288.**

Supreme Court of Idaho.

Oct. 19, 1981.

4. *State v. Blackburn*, 99 Idaho 222, 579 P.2d 1205 (1978).

Danny J. Radakovich of Rapaich & Knutson, Lewiston, for employer-appellant.

Wynne Blake of Blake, Feeney & Clark, Lewiston, for claimant-respondent.

BAKES, Chief Justice.

This worker's compensation appeal centers on the constitutionality and application of I.C. § 72–210, which provides:

"72–210. EMPLOYER'S FAILURE TO INSURE LIABILITY.—If an employer fails to secure payment of compensation as required by this act, an injured employee, or one contracting an occupational disease, or his dependents or legal representative in case death results from the injury or disease, may claim compensation under this law and shall be awarded, in addition to compensation, an amount equal to ten per cent (10%) of the total amount of his compensation together with costs, if any, and reasonable attorney's fees if he has retained counsel."

Prior to respondent Heese's accident, employer appellant A & T Trucking (A & T) was attempting to procure worker's compensation insurance after its former insurer decided to get out of the western market. On April 5, 1977, A & T applied to Argonaut Northwest Insurance Company for coverage. A & T's president and bookkeeper testified that at that time they paid the requested deposit premium to Argonaut's agent, who informed them that they were thereafter covered.

Respondent Heese was injured on the job on May 16, 1977. However, Argonaut denied that any insurance coverage had been procured and refused to pay Heese's compensation claim. After hearings before the Industrial Commission, Heese was awarded income and disability benefits. The commission found that while A & T believed that it had obtained worker's compensation

insurance from Argonaut effective April 5, 1977, no such insurance policy had ever issued. The commission concluded that A & T was not in fact insured on the date of the injury, May 16, 1977.[1] The commission also found that no notice of security had been filed with the commission as required by I.C. § 72–311(1). Based on the above findings and the language of I.C. § 72–210, the commission awarded Heese an extra 10% of the compensation award, as well as costs and attorney fees. The employer appeals, contending that the commission erroneously construed I.C. § 72–210 and that the statute as construed violates constitutional principles of equal protection and due process. We disagree and affirm the commission's award.

■ The employer contends that I.C. § 72–210 should not be construed to apply to those employers, like A & T, who have made good faith attempts to procure insurance and reasonably believe that they have done so. However, that statute specifically imposes penalties upon an employer who "fails to secure payment of compensation as required by this act." In order to "secure payment of compensation as required by this act," I.C. § 72–311(1) requires that "[t]he employer shall forthwith file with the commission in form prescribed by it, a notice of his security." I.C. § 72–312 requires the employer to

> "post and maintain in a conspicuous place or places in and about his place or places of business typewritten or printed notices in form prescribed by the commission, stating the fact that he has complied with the law as to securing the payment of compensation to his employees and their dependents in accordance with the provisions of this law. Such notice shall contain the name and address of the surety, if any, with which the employer has secured payment of compensation."

I.C. § 72–312 further provides that "[a]n employer who fails to post and keep such

notice conspicuously displayed shall be guilty of a misdemeanor." Viewing these several provisions *in pari materia*, as we must, it is apparent that the legislature intended strict compliance with those provisions requiring the employer to obtain security for payment of the compensation to injured employees, and that it intended substantial penalties for non-compliance.

■ I.C. § 72–210, the specific section invoked by the commission to impose the penalty in this case, is unambiguous. It requires no showing of bad faith or scienter as a prerequisite to the imposition of the 10% surcharge, costs or attorney fees. The commission did not err in concluding that an employer failing to secure payment of compensation as required by the act is strictly liable for the statutory penalty.

■ The employer next contends that the statute runs afoul of state and federal equal protection clauses. The employer contends that I.C. § 72–210 creates a special class composed of employers who have not provided security for compensation, and that such classification fails to provide equal protection under the law. Since I.C. § 72–210 creates no suspect, "near" suspect, or invidiously discriminatory classification, and entangles no fundamental or "quasi" fundamental right, the statute must be tested under the restrained standard of equal protection review, the familiar "rational basis" test. *LePelley v. Grefenson*, 101 Idaho 422, 614 P.2d 962 (1980); *Idaho Quarterhorse Breeders Ass'n, Inc. v. Ada County Fair Board*, 101 Idaho 339, 612 P.2d 1186 (1980); *School Dist. No. 25 v. State Tax Comm'n*, 101 Idaho 283, 612 P.2d 126 (1980); *Jones v. State Board of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). The statute easily withstands such scrutiny. One of the purposes of the worker's compensation law is to provide "sure and certain relief" for an injured worker

1. A & T commenced a separate action against Argonaut alleging that a contract for worker's compensation coverage had been made between Argonaut and A & T. The commission noted in its opinion that A & T's pending court action against Argonaut had not yet been resolved. At oral argument, counsel for appellant advised this Court that the action had been settled, apparently for an amount less than Heese's claim.

and the worker's family. I.C. § 72–201. To that end, the legislature saw fit to impose a statutory penalty without regard to fault in every case where the employee's recovery is at risk by virtue of the employer's failure to "secure payment of compensation as required by this act." The penalty imposed is one rational way to encourage employers to comply with the act.

■ The employer next contends that the statute is constitutionally contrary to state and federal due process provisions. The standard applicable in due process cases is whether the challenged law bears a rational relationship to a legitimate legislative purpose. *E. g., Jones v. State Board of Medicine, supra.* For reasons already stated above, we hold that I.C. § 72–210 survives a due process attack as well.

■ Finally, the employer contends that the Industrial Commission lacked subject matter jurisdiction to decide whether there existed a contract of insurance between A & T and Argonaut Insurance Company. The employer alleges that in two previous cases, *Martin v. Argonaut Insurance Co.,* 90 Idaho 107, 408 P.2d 475 (1965), and *Thompson v. Liberty National Insurance Co.,* 78 Idaho 381, 304 P.2d 910 (1956), this Court held that the Industrial Accident Board did not have jurisdiction to determine disputes between the employer and its putative compensation carrier regarding the existence of coverage. *See also Lemhi Tel. Co. v. Mountain States Tel. & Tel. Co.,* 98 Idaho 692, 571 P.2d 753 (1977). Neither case involved the employee's right to the penalties of I.C. § 72–210, but instead involved the question of ultimate responsibility as between the employer and the insurance company. Here, the commission decided only whether, as between the injured employee and the employer, an additional award of compensation was to be made to the employee because "the employer fail[ed] to secure payment of compensation as required by this act." The commission's finding that A & T had failed to file its notice of security as required by I.C. § 72–311 was sufficient to justify the imposition of penalties required by I.C. § 72–210. The commission did not

and did not need to resolve the ultimate question of coverage as between the employer and Argonaut Northwest Insurance Company. Therefore, the commission did not exceed its jurisdiction as in the *Martin* and *Thompson* cases.

The award of the Industrial Commission is therefore affirmed. Costs are awarded to respondent. Attorney fees are also awarded to respondent pursuant to I.C. § 72–210 to be fixed by the Industrial Commission on remand.

McFADDEN, DONALDSON and SHEPARD, JJ., concur.

BISTLINE, Justice, concurring in result in part.

## I.

Included in the Commission's conclusions of law is this:

> "The defendant did not obtain an insurance policy and has failed for a period of nearly 21 months following the claimant's injury to establish the existence of such a policy."

and this:

> "The Commission concludes that, the penalty of section 72–210 should be invoked."

As to the second statement immediately set forth above, it is susceptible of the inference that had the employer faced up to the fact that he could be paying the employee's benefits while the contractual dispute between the employer and Argonaut wound its way through the court system, and done so, the application of the penalty was left in their discretion, and would not have been inflicted.

As to the first statement, it is equally inferrable that had the employer established Argonaut's liability as carrier, as was done in *Martin v. Argonaut Insurance Co.,* 91 Idaho 885, 434 P.2d 103 (1967), the penalty would not have been inflicted on the employer. This Commission stance will seem to some a bit unrealistic when it is noted that the Commission ruled on the penalties less than two years after the inju-

ry occurred. In the case of *Martin* it must be noted that he was injured in May of 1962 and Argonaut's liability as surety for Woods was not judicially determined until November of 1967, five and one-half years later. In that day there was not the backlog problem that has plagued the courts starting somewhere in the seventies, making it arguable that the Commission might better have abated its ruling on penalty and attorney fees until the court litigation had a reasonable time to reach fruition. The Commission, however, may have been justified in bringing the case before it to a finale, and on that score there is little reason to speculate at this stage because, in my view, I agree with the argument of the employee that—absent the employer demonstrating his inability to assume responsibility to his own employee—the penalty might properly be inflicted on that ground alone. Where, as is apparently the case here, the employer is not himself in financial distress and can manage to assume the liabilities which he thought to have contracted out for a $1,200 premium tendered and accepted, there is a strong ring of truth to the employee's statement that to him "it is immaterial whose fault it is that the employer has no insurance. He is only interested in being compensated." [Brief of employee Heese at 27.] Where the injuries are serious, or the accident is fatal, however, many are the employers who will be unable to pay the benefits, in which event the employee or his surviving dependents have a substantial interest in establishing the surety's obligations.

## II.

The Court adroitly avoids the question of the jurisdiction of the Commission to determine the contractual issue, *i. e.*, Was A & T Trucking covered in its operations by a contract of insurance with Argonaut? This the Court does simply by only going so far as to declare the lack of a filed notice of security as sufficient to justify the imposition of penalties on the employer. I am unable to agree with this approach, and strongly urge that this case provides the opportunity for the Court to acknowledge authority in the Commission to determine the contract issue in the context of the present case.

I.C. § 72–707 provides: "All questions arising under this law, if not settled by agreement or stipulation of the interested parties with the approval of the Commission, except as otherwise herein provided, shall be determined by the Commission." One of the questions which today arises under "this law" is whether the employer has failed to obtain insurance such as to subject him to penalty under I.C. § 72–210. To my mind it is obvious that the Commission must have jurisdiction to make this determination. Otherwise the contractual issue, and with it concomitantly the penalty issue—which should properly hinge upon the outcome of the contractual issue—will necessarily take a tortuous route through time-consuming district court and appellate proceedings. Such obviously would conflict with the avowed purpose of the Workmen's Compensation Act. The question of the penalty has not been given to the courts but is one for the Commission; to decide whether the penalty ought to be imposed the Commission must first determine whether there exists liability upon the part of the surety, contractually or otherwise. If it concludes the employer-surety dispute adversely to the surety, liability against the surety *in favor of the working man claimant* is thereby established. For the claimant that is what may be his only real source of the compensation benefits to which he is entitled.

That the Commission does have the authority to determine the alleged surety's obligation to the employer and employee is supported by Larson's statement of the general rule:

"The general rule appears to be that, when it is ancillary to the determination of the employee's right, *the compensation commission has authority to pass upon a question relating to the insurance policy, including* fraud in procurement, mistake of the parties, reformation of the policy, cancellation, existence or validity of an insurance contract, *coverage of the policy*

at the time of injury, and construction of extent of coverage. This is, of course, in harmony with the conception of compensation insurance as being something more than an independent contractual matter between insurer and insured." 4 Larson on Workmen's Compensation Law § 92.40 (emphasis added) (footnotes omitted).

Indeed, the vast majority of courts hold that industrial commissions are necessarily endowed with the authority to determine contractual issues when necessary. *See, e. g., International Piling, Inc. v. American National Fire Insurance Co.,* 345 So.2d 761 (Fla.App.1977) (commission has jurisdiction to determine existence of insurance coverage); *St. Paul Fire & Marine Insurance Co. v. Littky,* 60 Mich.App. 375, 230 N.W.2d 440 (1975) (determination of liability of insurance company is for commission); *Greene v. Spivey,* 236 N.C. 435, 73 S.E.2d 488 (1952) (commission has jurisdiction to determine existence of insurance coverage); *Rockwood Insurance Co. v. Workmen's Compensation Appeal Board,* 45 Pa.Cmwlth. 109, 405 A.2d 569 (1979) (board may decide whether insurer's power to cancel has any legal effect).

Moreover, even if this were not so, one would wonder why our legislature deemed it appropriate to require that one member of the Commission be learned in law.[1] That the legal member of the Commission possesses all of the qualifications which are required of district judges and Supreme Court Justices is of no small significance. In addition, the legal member is immeasurably aided by the other two members who, although not admitted to the bar, have a vast accumulation of knowledge and experience in such matters, which, compacted,

might be called plain common sense and intuitive fairness.

*Thompson v. Liberty National Insurance Co.,* 78 Idaho 381, 304 P.2d 910 (1956), is cited in the Court's opinion, but obviously has not been reviewed and is not understood at all. Applicable here is the Court's statement in *Thompson* that "[a]s between claimant . . . the employer and the surety, the Board has jurisdiction to determine the liability, if any, to claimant and enter an award against employer and the surety." 78 Idaho at 384, 304 P.2d at 911. In that case, too, the surety denied coverage, but *the employer admitted liability and paid compensation benefits* prior to an Industrial Accident Board hearing which involved only the dispute between the employer and the surety. The vitally interested party, which of course was the employee, was out of it and no longer involved. The employer pursued its contractual rights against the surety in district court. On appeal this Court simply held, with which all should agree, that "the contract relationship of the employer and the surety was no longer a subject of controversy for the Board to determine." *Id.* Thus *Thompson* was properly said to have involved *a matter of contribution,* over which the Board did not have jurisdiction, and its determination was held not *res judicata*[2] which, of course, it was not nor did it purport to be. Citations of authority in the opinion and statements of this Court there made are clear manifestation of the Court's view of the Workmen's Compensation Act that, had the employer not accepted liability and taken care of his employee, that is, had there been a three-cornered fight before the Commission involv-

---

1. "The third appointee shall be an attorney at law duly licensed to practice in this state." I.C. § 72–501(4). Similarly, district judges must be learned in the law. Id. Const. art. 5, § 23.

2. The ruling in *Thompson* did not contradict the general rule as stated in Larson. In fact, in addition to the above statement of the general rule, § 92.40 adds this illumination:

   "On the other hand, *when the rights of the employee* in a pending claim *are not at stake,* many commissions disavow jurisdiction and

send the parties to the courts for relief. This may occur when the question is purely one between two insurers, one of whom alleges that he has been made to pay an undue share of an award to a claimant, the award itself not being under attack. *Or it may occur when the insured and insurer have some dispute entirely between themselves about the validity or coverage of the policy* or the sharing of the admitted liability." 4 Larson on Workmen's Compensation Law § 92.40 (emphasis added) (footnotes omitted).

ing the injured employee, the Commission would have properly passed on the contractual issue as necessary to its exclusive jurisdiction to entertain and expeditiously and inexpensively resolve the workman's claim, as witnessed by this language:

"The Industrial Accident Board's jurisdiction is created by statute. As between claimant in an industrial accident case, the employer and the surety, the Board has jurisdiction to determine the liability, if any, to claimant and enter an award against employer and the surety. Sec. 72–613, I.C. As between the injured workman, the employer and the surety, the award in such cases is final unless appealed from. Sec. 72–608, I.C.; *Johnson v. Falen*, 65 Idaho 542, 149 P.2d 228.

"*The controversy here is not one in which the injured workman is in anywise interested.* The liability having been paid by the employer prior to the Industrial Accident Board hearing, the contract relationship of the employer and the surety was no longer a subject of controversy for the Board to determine." 78 Idaho at 384, 304 P.2d at 911 (emphasis added).

*Martin* was simply a blind, unreasoned and cursory acceptance of that which the surety represented to the Court was the *Thompson* conclusion, without any regard whatever for the difference in the parties involved. The Court's failure to recognize this crucial difference resulted in an aberration; *Martin* is the *only* case cited by Larson as being contrary to the general rule. 4 Larson on Workmen's Compensation Law § 92.40 at 17–21 n.46 and Cumulative Supplement. The Court today is obliged to overrule *Martin* and align with the absolute weight of authority which holds that the Industrial Commission can and should determine the contractual issue when it is necessary to do so *in reaching and determining the employee's right* to the "sure

and certain relief" promised by the fine-sounding resonant tones of the preamble to the Workmen's Compensation Act.

As mentioned in Part I, this is apparently a case where the working man's employer could have, as in *Thompson*, initially assumed the responsibility for his employee's medical expenses and loss of income, and where the employer could have, thereafter, and independently of the Commission proceedings, pursued the surety either in contract or for its negligence in leaving him so exposed.[3] That the insurance company may have acted in breach of its obligations to its assured, the employer, and to the employee, did not in turn authorize the employer to disregard his obligations to the employee. Were an employer to initially look to the needs of an injured employee, it would be difficult to envision a court which would uphold the infliction of any penalty upon the employer for a misfeasance of the surety with whom it had contacted or contracted for compensation insurance. I much doubt that the Commission would have done so.

The caveat to keep in mind, however, is that not all employers are financially able to meet the medical and hospital expenses, and monthly compensation payments which may attend a serious injury.[4] Such indeed was the case with Richard Martin, the claimant in the *Martin* case. As will be noted in the *Martin* case cited in the Court's opinion, *Martin v. Argonaut Insurance Co.*, 90 Idaho 107, 408 P.2d 475 (1965), on appeal from the Commission's ruling, Martin, who properly proceeded against both his employer and alleged surety, asserted that the Commission erred in denying itself possessed of jurisdiction. At the same time Martin, the claimant, *and* Woods, the employer, joined in a companion appeal, *Martin v. Robert W. Woods Lumber Co.*, 90 Idaho 105, 408 P.2d 474 (1965), from a dis-

---

3. It is on the basis that the employer did not do so that I concur in the result reached. The *Martin* case, wrongly decided as it was, precluded the Commission from entertaining the contractual dispute which was between the employer and the insurance firm which was to have provided coverage.

4. The extremely well financed employer is, of course, statutorily offered the option to become a self-insurer.

trict court determination that it did not have jurisdiction to determine the jointly made claim of Martin the employee and Woods the employer that Argonaut was liable as surety for Woods.

Martin was a severely injured employee, primarily loss of one eye by enucleation, loss of use of one arm, nearly complete loss of jaw function plus other injuries, and Woods was an employer not financially able to provide the surgery that was necessary to, and would have to a large extent restored his impaired physical functions other than the eye—all of which was well stated in *Martin Estate v. Woods*, 94 Idaho 870, 873 n.1, 499 P.2d 569, 572 n.1 (1972). Even though the district court on remand was to hold that Argonaut was estopped from denying coverage as Woods' surety, which was decreed and affirmed by the Supreme Court in 1967, *see Martin v. Argonaut Insurance Co.*, 91 Idaho 885, 434 P.2d 103 (1967), Martin meanwhile died without having received any of the corrective surgeries which were necessary to allow him good bodily function. Martin expired from exposure on becoming lost while hunting deer in October of 1963, some 18 months after he had been injured. The courts did not reach a final determination as to Argonaut's liability as surety until the release of the Supreme Court's opinion affirming the district court's ruling in November of 1967, going on SIX YEARS after Martin was injured and initiated his quest for the golden fleece of "sure and certain relief."

With some detail I display for public view the saga of the *Martin*[5] case for the reason that it may catch the attention of the Court membership—and if not, then of the legislature.[6] For the injured workman whose em-

---

**5.** The ironic conclusion of the *Martin* case deserves mentioning. Following his tragic death his young wife and small children attempted to collect from Argonaut the sums of money which had been due him for his specific injuries which were suffered in the industrial accident and which still affected him at his death—the surety during the course of its six years of litigation having refused to furnish the corrective surgery which was recommended. On Martin's death the surety took the position that those injuries collectively amounted to a total disability which, of course, terminated on his death (death being unrelated to his accident), and the surety promptly paid the weekly benefits which had accrued in the 18 months of elapsed time from injury to death, declaring its liability at an end. Notwithstanding that no doctor testified that Martin's disability put him in the class of totally and permanently disabled, the Commission strangely concluded that he was so disabled, and, more strangely, the Supreme Court upheld that decision, notwithstanding a footnote observation that:

"The record reflects, however, that both Dr. Hamacher and Dr. Maris had contemplated further treatment of Mr. Martin. It is recognized that the surgical procedures contemplated by Dr. Hamacher probably would have alleviated the problem of Mr. Martin's jaw. Following the accident, Mr. Martin could only open his mouth approximately half an inch. Dr. Hamacher testified that following the proposed operation Mr. Martin would have been able to open his mouth normally had the operation been performed. Dr. Maris testified that had he the opportunity to do further work, he could have restored some movement in the remaining fingers of

the right hand." 94 Idaho at 873 n.1, 499 P.2d at 572 n.1.

**6.** This footnote is added after circulating this opinion—which failed to gain any endorsement whatever—nor was it able to catch any attention even to the extent of responding to rather baldly made assertions that the present Court membership does not at all comprehend that which an earlier Court wrote in *Thompson*, which I point out with documentation was inadvertently misread in *Martin*.

Disappointed at the Court's inaction, I note only that it will not be a surprising matter to the trial bar who only recently in the criminal field observed that the same majority of the Court did not deign to acknowledge or respond to an opinion which pointed out that the Court itself had visited onto the trial bench and bar, as well as the people of this state the erroneous proposition of law that a *presumption* of guilt arises from the possession of recently stolen property, rather than the correct view that such possession is a mere circumstance from which, when unexplained, an inference of guilt may arise—in direct contravention of the Constitution of the United States according to the teachings of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 and *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380—all more fully set forth and discussed in *State v. Owens*, 101 Idaho 632, 619 P.2d 787 (1980) Bistline, J., dissenting.

When such blatant discrepancies are brought to the Court's attention, it is regrettable that the trial bench and bar, who must look to this Court for guidance, are not enlightened as to the rationale under which the Court remains impervious to the obvious.

ployer believes himself properly carrying compensation insurance, and which employer cannot meet the financial burdens (and penalties) imposed upon him as an involuntary self-insurer, the Court's *Martin* decision impedes the purpose of the Act as accurately understood by the Court in *Thompson*—a totally unacceptable state of affairs which leaves the working man (in his own parlance) "sucking air" and remediless, while his employer and the employer's alleged surety fight out their respective contentions in the district court, in the Supreme Court, back in district court, and once again in the Supreme Court.

### III.

Might it not seem that the Court, and if not the Court then the legislature, should bear in mind that inside of four months Idaho's Intermediate Court of Appeals will be in operation? Part and parcel of compromises effected in obtaining passage of legislation creating that court was the important proposition that provision be made for all appeals from the Industrial Commission to be taken to and retained by the Supreme Court—as a matter of right—a provision secured on behalf of the injured working man and the guarantee of "sure and certain relief" which was his *quid pro quo* for the surrender of his rights to sue his employer in tort.

On the other hand appeals taken from the district courts for the most part will fall back into the lap of the intermediate court from whence, on a decision being rendered there, either party may seek another appeal, entirely a matter of judicial discretion, in this Court. Had the intermediate court existed in the time of Richard Martin, the sure and certain relief (which was never to be his) in all likelihood would have been extended even beyond its eventual finale on June 2, 1972, which was one day and ten years after Richard Martin was injured on May 1, 1962, while working at a mill operation which both he and his employer believed to be covered by Argonaut.

With the advent of the intermediate court and with due regard for the *Martin* case as viewed in light of the declared purpose of the Workmen's Compensation Act, as a matter of policy neither the Court nor the legislature should back away from considering that the legislature has in fact insisted that appeals from the Commission shall be heard in the Supreme Court—certainly in implementation of earlier legislative policy that the working man's relief be sure and certain. All that is needed is a return to the 1956 language of the *Thompson* case from which it can only be concluded that had Thompson's employer not paid Thompson's benefits and thereby removed Thompson's very keen and urgent interest in the outcome of the controversy between his employer and that employer's surety, the Commission would have properly resolved all issues brought before it in the claimant's pursuit for relief. The Court carefully noted that its ruling in the case was *"under the facts here presented,"* 78 Idaho at 384, 304 P.2d at 911, which facts in the preceding two sentences the Court noted were that "the controversy here is not one in which the injured workman is in anywise interested. The liability having been paid [to the claimant] by the employer prior to the Industrial Accident Board hearing, the contract relationship of the employer and surety was no longer a subject of controversy for the Board to determine." *Id.*

Nine years later in the companion *Martin* appeals, one of which was from a Commission ruling that it did not have jurisdiction to determine the contractual issue between surety and employer, and the other from a district court ruling that it also had no jurisdiction to determine that same issue, appellant Martin, as appears at 90 Idaho 108, 109, 408 P.2d 475, urged an impressive array of authority for the proposition that the Court, faced squarely with the reality that it would have to reverse either the district court or the Commission, should hold that the latter was the proper tribunal in which to resolve the issue *on a claimant's* petition before it. Argonaut, however, submitted *Thompson* as Idaho authority for the proposition that the Commission is always

without jurisdiction even where the claimant is still very much a party involved in the contractual dispute between the employer and the surety. *See* 90 Idaho at 109, 408 P.2d 475. This Argonaut argued, notwithstanding that Martin, as well as his employer, was also contending an estoppel against the surety to prevent it from escaping its liability.

The Court, with only one member thereon who had participated in the 1956 *Thompson* decision, quite apparently accepted the surety's statement of the *Thompson* holding. Understandably, the Court's error and seeming indifference to the actual holding of *Thompson*, and to the wording of I.C. § 72–707, and to the complete weight of authority, logically may have been occasioned by the realization that it necessarily had to hold in favor of the claimant in one of the two appeals, and fastened error on the district court holding because the district court action had already been fully tried and then dismissed instead of decided when that court succumbed to the surety's contention that it, too, lacked jurisdiction.

Nevertheless, there was more at stake in the *Martin* cases than the plight of Martin the claimant, and it is regrettable that the Court then failed to understand its *Thompson* holding—which was fully in accord with all other jurisdictions, whereas the *Martin* holding finds support nowhere, and certainly not in *Thompson*.

For all of which reasons today's opportunity to correct the error of the 1965 *Martin* cases should be utilized for the benefit of other claimants who may one day face the situation which here confronted this claimant and his employer. At the very least the legislature should provide a fund upon which claimants may draw while impecunious employers and compassionless sureties resolve problems, the process of which the legislature failed to anticipate might wreak havoc and financial disaster upon wholly innocent Martins and Heeses who believed they performed their services under an umbrella of coverage. As for the employer who is today penalized, no member of the Court has suggested the manner in which he and other employers who believe themselves to have procured insurance may protect themselves from financial calamity where the insurance carrier has failed them. Certainly an action to later recoup is wholly inadequate.

## IV.

The unfortunate *Martin* decision which misapplied *Thompson* has in turn precipitated counsel for the employer in this case into a strong and well written constitutional attack, and in turn a strong and equally well written answer by Heese's attorney. I do not disagree with the Court's disposition of the constitutional issue, other than that I do not think that it need be reached, and only lament with these parties that they have been by *Martin* put to such trouble and expense. I would not further visit upon the employer *all* attorney fees for this appeal.