650 P.2d 669

Martin W. IVERSON,
Claimant-Appellant,

v.

GORDON FARMING CO., INC.
Defendant-Respondent.

No. 13668.

Supreme Court of Idaho.

Sept. 2, 1982.

Jay D. Sudweeks, of May, May, Sudweeks & Shindurling, Twin Falls, for claimant-appellant.

Robert M. Tyler, Jr., of Elam, Burke, Evans, Boyd & Koontz, Boise, for defendant-respondent.

DONALDSON, Justice.

The appellant, Martin W. Iverson, was injured on December 15, 1975, in an industrial accident arising during the course of his employment as a truck driver for the respondent, Gordon Farming. Because of a dispute over the payment of the claim Iverson filed an application for hearing with the Industrial Commission on February 11, 1976.

In October, 1976, Iverson's attorney entered into a stipulation with Gordon Farming that the claim before the Industrial Commission be dismissed "with prejudice for the reason that the same has been fully compromised and settled." The stipulation was based upon the preliminary determination that the injury was a result of agriculturally-oriented employment that would exempt Gordon Farming from the requirement of carrying Workmen's Compensation Insurance. The stipulation was not entered into on the basis that a payment, in an

attempt to settle the claim, had been made to Iverson. Iverson's attorney later testified in an affidavit that he entered into the stipulation after misinterpreting a conversation he had with Iverson.

Pursuant to the stipulation, although not stating "with prejudice," the Industrial Commission dismissed the claim on October 22, 1976. An action was then brought by Iverson in district court on the theory of negligence but this suit was dismissed because of lack of jurisdiction.

Following this dismissal, Iverson, through new counsel, filed a motion to reopen the case before the Industrial Commission on March 27, 1978, under I.C. § 72–719(3)[1] claiming that the case required reopening in order to correct a manifest injustice. The Industrial Commission referee recommended to the Industrial Commission that the motion be granted. Thereafter, the Commission granted the motion to reopen and a second application for hearing was then filed by Iverson on September 18, 1978. After several continuances the matter was set for hearing.

At the hearing Gordon Farming made a motion to dismiss the case at the close of the testimony. On February 29, 1980, an order dismissing the claim was entered by the Industrial Commission. The referee determined that Iverson "suffered an industrial accident, arising out of and during the course of his employment as a truck driver for the defendant on December 15, 1975," and that Gordon Farming's "trucking operation is not exempt from the Workmen's Compensation Law pursuant to the agricultural exemption." The referee also found that, "[a]s a consequence of his industrial accident, Claimant suffered a period of total temporary disability," "[b]y reason of his industrial accident, Claimant incurred certain medical expenses," and "[a]s a consequence of the industrial accident of December 15, 1975, Claimant suffers some perma-

nent partial disability." However, the referee further determined that there was "no evidence in the record sufficient for making a determination of Claimant's average weekly wage for purposes of computing benefits under the Workmen's Compensation Law." Finally, the referee concluded, however, "that Defendant's Motion to Dismiss should be granted for the reason that no manifest injustice has been shown pursuant to *Idaho Code*, Section 72–719(3)." The Industrial Commission then entered its order dismissing the claim based upon the referee's memorandum decision. This appeal followed.

I.

■ The appellant, Iverson, argues that the Commission erred in dismissing his claim after a hearing on the basis that he failed to show manifest injustice because the Commission initially reopened his claim in order to correct a manifest injustice. The respondent, Gordon Farming, argues that the motion to reopen the case should not even have been granted. Iverson also claims that the Commission erred in finding that there was insufficient evidence to determine average wage and that attorney fees should be granted.

We are not persuaded by Gordon Farming's argument that the case should not have been reopened because (1) it had initially been dismissed with prejudice, and (2) the long delay in filing for rehearing had prejudiced the respondent. Firstly, even though the parties stipulated that the case "may be dismissed with prejudice," the Commission's order stated only that "[i]t is hereby ordered that the above-entitled claim, being No. I.C. 142350 is dismissed." Therefore, because the order did not dismiss the claim with prejudice we need not consider the appellant's first argument.

---

1. I.C. § 72–719(3) reads as follows:

"72–719. Modification of awards and agreements—Grounds—Time within which made.—

. . . .

"(3) The commission, on its own motion at any time within five (5) years of the date of the accident causing the injury or date of first manifestation of an occupational disease, may review a case in order to correct a manifest injustice."

Secondly, concerning the long delay, this case was reopened within the five-year time period set forth in I.C. § 72–719(3). We hold that the time within which a motion to review can be brought is governed by this five-year period and not by a claim of prejudice. If prejudice were used as the standard for review a case might never be reopened since it is difficult to imagine a situation in which the other party would not be prejudiced in some manner.

We uphold the Commission's initial order reopening the case. Iverson's motion was supported by his attorney's affidavit stating that he entered into the stipulation because of a misunderstanding with Iverson. Because of this unauthorized stipulation Iverson was denied his right to a hearing before the Industrial Commission, and this was sufficient to establish a viable claim of manifest injustice which substantiated the Commission's grant of a hearing, *Sines v. Appel,* 103 Idaho 9, 644 P.2d 331 (1982), where we said that "the term 'manifest injustice' as a ground for reopening and review of an order must be construed broadly." *Id.* at 13, 644 P.2d at 335.

## II.

■ The next issue the appellant asks us to consider is whether the Commission after a full hearing, was correct in denying relief on the grounds that Iverson failed to show manifest injustice under I.C. § 72–719(3), on the referee's recommendation. However, because the Commission did not make specific findings to support the conclusion that manifest injustice was not shown, we are unable to review this issue adequately and therefore, remand to the Commission to review their decision in light of *Sines, su-* pra, and to make specific findings in order that this Court can properly review the issue.

## III.

■ Next, Iverson argues on appeal that the Industrial Commission's finding that "[t]here is no evidence in the record sufficient for making a determination of Claimant's average weekly wage for purposes of computing benefits under the Workmen's Compensation Law" is incorrect. Gordon Farming argues that this finding should be upheld because the claimant had only worked for Gordon Farming a short time and there was no discussion of further trips to be made with the claimant. We disagree. Where, because of the shortness of time of the injured claimant's employment, or from the nature of the employment, a rate of average weekly earnings cannot be practicably determined, a method for computation is provided by I.C. § 72–419.[2] However, it appears that the referee for the Industrial Commission did not take into consideration this method of computation, and therefore, we remand this case back to the Industrial Commission to again examine this issue in light of I.C. § 72–419.

■ This evidence relating to the claimant's length of employment is relevant in establishing whether Gordon Farming was exempt from coverage under I.C. § 72–212(2) dealing with casual employment. However, Gordon Farming argued only that the trucking operation was exempt from the Workmen's Compensation Law pursuant to the agricultural exemption and did not argue at the hearing or on appeal that Gordon Farming was exempt pursuant to the casual employment exemption. There-

**2.** I.C. § 72–419(5) and (11) reads as follows: "72–419. Determination of average weekly wage.—Except as otherwise provided in this law, the average weekly wage of the employee at the time of the accident causing the injury or of manifestation of the occupational disease shall be taken as the basis upon which to compute compensation and shall be determined as follows:

. . . .

"(5) If at such time the hourly wage has not been fixed or cannot be ascertained, the wage for the purpose of calculating compensation shall be taken to be the usual wage for similar services where such services are rendered by paid employees.

. . . .

"(11) When circumstances are such that the actual rate of pay cannot be readily ascertained, the wage shall be deemed to be the contractual, customary or usual wage in the particular employment, industry or community for the same or similar service."

fore, we decline to consider this evidence in light of I.C. § 72–212(2).

## IV.

■ Finally, Iverson argues that because Gordon Farming failed to carry Workmen's Compensation Insurance that attorney fees should be awarded to him. Gordon Farming argues that it made a good faith attempt to procure the insurance. For us to award attorney fees at this time would be premature. However, this Court has recently stated in *Heese v. A & T Trucking,* 102 Idaho 598, 635 P.2d 962 (1981) that,

"[i]t is apparent that the legislature intended strict compliance with those provisions requiring the employer to obtain security for payment of the compensation to injured employees, and that it intended substantial penalties for non-compliance.

"I.C. § 72–210, the specific section invoked by the commission to impose the penalty in this case, is unambiguous. It requires no showing of bad faith or scienter as a prerequisite to the imposition of the 10% surcharge, costs or attorney fees." *Id.* at 600, 635 P.2d at 964.

Therefore, in the event the Industrial Commission determines that Iverson is covered the Commission is directed to follow *Heese.*

The order of the Industrial Commission is reversed and the claim is remanded for proceedings in conformity with this opinion.

Costs to appellant.

McFADDEN and SHEPARD, JJ., concur.

BISTLINE, J., concurs in Parts I, III, and IV, and writes separately on Part II.

(McFADDEN, J., registered his vote prior to his retirement on August 31, 1982.)

BISTLINE, Justice, concurring in reversal, but not as to scope of further proceedings.

## I.

The Court's opinion, insofar as it reverses and explains the reversal, is soundly written, and I am in agreement. From there I would direct that on remand the Commission again examine the issue of benefits due Iverson, as the Court's opinion provides, but I do not see the wisdom, logic, or necessity of asking for any further consideration of manifest injustice. In *Sines v. Appel,* 103 Idaho 9, 644 P.2d 331 (1982), I pointed out in my concurring opinion that the legislature in enacting I.C. § 72–719(3) conferred upon the Commission broad equitable powers akin to those possessed by the district courts. Today it is in order to amplify on that comparison of district court procedures in granting new trials to those of the Commission in reopening for manifest injustice.

The language of I.C. § 72–719(3) bears a strong resemblance to the statutory provisions which in 1971 governed the granting of new trials in the district courts, and it is readily believed that the sponsors of I.C. § 72–719(3) had those provisions well in mind. A district judge could under the provisions of I.C. § 10–608 grant a new trial on its own motion without the application of either party, as well as upon the application of a party.[1] Where the district court of its own motion granted a new trial, absent an appeal the new trial took place, and it is to be very much doubted that there is a reported or unreported case in which, at the close of the second trial, the district court purported to retroactively retract the order which had granted the new trial.[2] So with a proceeding under I.C. § 72–719(3), once a case has been reopened for reconsideration of the issues formerly tried, it would be an anomaly of the law if, after

1. The Court promulgated the identical provision in I.R.C.P. 59(d).

2. In *Spivey v. District Court,* 37 Idaho 774, 219 P. 203 (1923), the district court tried the case, entered judgment and denied a motion for a new trial. The court, however, later entered an order granting a new trial, in effect, reversing its original order. This Court held that the judge had no jurisdiction to grant a rehearing on the order and stated: "[T]he clear intent for statutes is that an order either granting or denying a new trial is final and the only remedy is by appeal." *Id.* at 781, 219 P. at 204.

the evidence was in, or during the progress of the case, the Commission could reverse the projection and recant its order. Yet that is what it has done in this case, most likely because, not having the benefit of *Sines v. Appel, supra,* and two members of the Commission not likely aware of the 1971 statutory provisions governing district court new trials, the Commission felt insecure in the exercise of the new power conferred upon it.

When a trial court grants a new trial in the belief that there has been a miscarriage of justice, it is not encumbent upon the judge of that court to make any findings of fact upon which are based the conclusion to grant a new trial. Moreover, in the federal system there is no right of appeal. In Idaho, although an appeal may be taken from such an order, the challenge is most generally denied, and the only result is a delay in the second trial.

The second trial may or may not be indicative of the trial court's initial belief that there was indeed a miscarriage of justice. The only gauge of accuracy of the earlier belief is the result of that second, and perhaps even a third trial. The point is, however, that the new trial, once ordered, does take place, and neither during that trial or after does the trial court have any authority to call a halt and reverse its own order granting the trial. (If there is such authority, I am unaware of its having ever been exercised.) If the second trial, whether to the court or jury being of no moment, produces the same result as the other, for certain it appears that there likely was not the miscarriage of justice which the court earlier perceived. But it is a judgment call and once made, other than for an immediate motion for reconsideration, it governs the ensuing procedure. At the second trial, the parties are not required to, nor should they, attempt to litigate the issue of the propriety of the order which has been entered. It is relegated to the status of *functus officio.*

So with a Commission order reopening for manifest injustice. Again, this is a judgment call, and one that need not be made with any specificity, and indeed ordinarily cannot be. Whether it is a sound decision will stand or fall on the outcome of the hearing which flows from the reopening. The Commission should not be given this broad power and then fettered with a court rule that would require them to justify an exercise of it. I fear the Court's opinion inadvertently and perhaps unwittingly tends to go in that direction.

II.

Implicit in the findings of the referee, which were adopted by the Commission, is that Iverson suffered an industrial accident while working for and employed by Gordon Farming. The referee also found that as a result of his industrial accident Iverson incurred certain medical expenses. Although the referee did not make a finding as to the amount of medical expenses incurred by Iverson, the record reveals that as a result of the accident Iverson incurred medical expenses of between $1,800 and $2,400. To the average working man or woman, this sum is no doubt significant. In fact, in this case, the record shows that Iverson has considered filing bankruptcy if his claim against Gordon Farming is unsuccessful, since he has no other way to pay his medical bills. Regardless of whether Iverson can establish a means by which to compute his wages, the fact that he received nothing when he was clearly entitled to at least $1,800, with equal clarity demonstrates that the original dismissal of Iverson's claim resulted in manifest injustice and the Commission was justified in reopening the case. That this *was* a case of manifest injustice is especially so since the dismissal of Iverson's claim resulted from his attorney's unauthorized stipulation. Thus, while I agree that the case should be remanded to the Commission in order to determine the extent to which Iverson is to be compensated, I would also hold that the Commission findings on the issue of manifest injustice amount to a post mortem attempt to substantiate the Commission's original order to reopen—findings that are not at all necessary.

There will be some occasions where the Commission may reopen and the second hearing produces the same result as the first hearing. This would be prima facie evidence that there may not have been any manifest injustice. In either event, where the Commission reopens, the subsequent result will tend to establish the appropriateness or inappropriateness of the reopening order—which is purely of academic interest, as where a district court grants a new trial. In *Sines,* however, it was not an academic question because such relief had been denied. On a constant basis this Court applies such a distinction in differentiating between the standards used in appeals from an order denying a new trial and the standards used in appeals from an order granting a new trial.

BAKES, Chief Justice, dissenting:

The majority opinion seems to be merely remanding this case to require the commission to make more specific findings on the issue of manifest injustice. While such a remand is unnecessary in my view, I would have no great objection to such a remand except for the ambiguous discussion of the issues that the majority engages in with which I cannot agree.

The majority asserts that because of an "unauthorized stipulation Iverson was denied his right to a hearing before the Industrial Commission and this is sufficient to establish a colorable claim of manifest injustice thereby requiring the Commission to grant a hearing." With that simple statement I could agree, were it not for the action of the majority in then questioning the referee's finding that no manifest injustice existed, after the referee had conducted a hearing and taken evidence on the issue.

It is clear to me that there are at least two reasons contained in the evidence in this record upon which the referee could have based his finding of a lack of manifest injustice. One reason is that the employment of Iverson by Gordon Farming was only casual at best. Under I.C. § 72–212(2), Iverson's claim could not have been granted if his employment was "casual."

This is probably one reason why the commission found no "manifest injustice."

The evidence strongly indicates that Iverson's employment by Gordon Farming was *very* casual. Iverson testified that he had been living with a woman who was residing in a small residence on the farm since August of 1975. He first worked for Gordon Farming for two days in October of 1975, discing rows of beans and baling some hay. He testified that his compensation for those two days of work was "a half pound of pot." In addition to being casual, that employment was exempt because it was agricultural employment. I.C. § 72–212(8). Gordon Farming next hired Iverson to clean up Gordon's semitruck which they used to haul their crops to the warehouse. Iverson testified that he spent about fifty hours on that job and was paid $200.00. David Gordon, the partner who hired Iverson, testified that Iverson spent about three or four days working on the truck. That work was done so that Gordon Farming could commence hauling beans to California and was performed a couple of weeks before the fateful trip on December 17, 1975.

At some point during this period, it was agreed that Iverson would accompany David Gordon as co-driver to haul a load of beans to California. Iverson's payment was to be expenses plus seven cents per mile. Gordon testified that Iverson was asked along on the trip because Iverson was familiar with the California area and Gordon was not. Gordon stated, "It's pretty hard to drive and read a map at the same time and he had been in that area before and it was just a deal to work out getting the truck going." Gordon testifed that the agreement covered only the one California trip.

Iverson's total employment for Gordon Farming was thus, two days of exempt farm work in October, 1975, for which he was paid "a half pound of pot"; three or four days of working on the truck for which he was paid $200 in early December, 1975; and part of one trip driving the truck on December 17, 1975, paid by the mile, during

which the relevant accident occurred. The commission would have been justified in finding that Iverson's employment was " 'merely incidental and occasional, without regularity and for a limited and temporary purpose and was not regular recurring employment which was customary and to be anticipated with regularity,' and hence the accident was not compensable." *Dawson v. Joe Jester Artificial Limb Co.,* 62 Idaho 508, 510, 112 P.2d 494 (1941); *see Bigley v. Smith,* 64 Idaho 185, 129 P.2d 658 (1942). Thus, the commission's finding of no "manifest injustice" is supported by this evidentiary record which discloses that the employment was "casual" and thus not covered employment, I.C. § 72–212(2), and the commission should be affirmed on that basis. However, the majority appears to want more detailed findings of fact, and thus this remand to the Industrial Commission results.

The other reason, clear from this record, that the commission could have found lack of a "manifest injustice" lies in the fact that there is insufficient evidence upon which to base a calculation of Iverson's average weekly wage under I.C. § 72–419. The majority indicates that "a method for computation is provided by I.C. § 72–419." The majority here is equating the existence of a *method of calculating* average weekly wages with the *evidence* necessary to apply that method of calculation. The two are entirely separate, and the majority's merger of the two is confusing.

The method of calculating average weekly wages under I.C. § 72–419 requires either a history of wages earned in the particular employment or where, as in this case, there was no wage history, then an agreed or customary wage rate *together with some evidence of the amount of employment the claimant could reasonably have expected.* Thus, in this case, where there was no history of wages in driving the truck, the claimant had to prove both that he had an agreed or customary wage rate, coupled with the prospect of continued future employment. Here there was an agreed wage rate, *i.e.,* seven cents per mile plus expenses, but there was no evidence that there would be any further employment after the one trip. Consequently, there was no evidence upon which the commission could determine that the claimant Iverson would have driven any future miles in order to determine what his average weekly wage might have been.

The existence of a method of calculation does not satisfy the need for evidence of either a history of wages or of an agreement, express or implied, of continued future employment. The statutory method of calculation creates the need for evidence of an employee's wages so that the *average* weekly wage may be calculated. In this case there is no evidence upon which to base a finding of an average weekly wage for Iverson, and therefore the commission would have been justified in denying Iverson's original claim. Because they would have been justified in denying that claim, such lack of evidence would have been a sufficient reason for the commission to deny Iverson's petition to reopen based on a lack of manifest injustice.

As asserted in the majority opinion, the commission was justified in permitting Iverson to reopen his case. However, that does not mean that Iverson's claim must then automatically be granted. Upon remand the commission would be justified in finding a lack of manifest injustice either because Iverson's employment was merely casual and thus not covered under I.C. § 72–212(2), or that there is a lack of evidence of either wages to be paid, or the amount of work which could be expected, upon which to base an award.